IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| YASMINE AMIR, § | |
| § | |
| *Plaintiff,* § | |
| § | Civ. No. 1:23-cv-253 |
| V. § | |
| § | JURY DEMANDED |
| ADAMS AND ASSOCIATES, INC. D/B/A § | |
| GARY JOBS CORPS CENTER, § | |
| § | |
| *Defendant.* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Yasmine Amir ("Amir" or "Plaintiff") files this Original Complaint against Defendant Adams and Associates, Inc., d/b/a Gary Jobs Corps Center ("Gary Jobs" or "Defendant"), and would show as follows:

### PRELIMINARY STATEMENT

1. Gary Jobs is specially entrusted by the Department of Labor to train the nation's young people to improve their lives and careers. Gary Jobs therefore has an even higher duty to treat its own employees lawfully. Despite its role as the public face of the Department of Labor, Gary Jobs allowed its employees to discriminate and retaliate against Iraqi immigrant Yasmine Amir with impunity.

2. Over a series of months, Amir reported illegal national origin discrimination and harassment and requested accommodation for her disabilities. Gary Jobs supervisors and human resources employees ignored her requests for assistance and hid behind bureaucratic excuses, telling the Equal Employment Opportunity Commission that Amir's repeated written concerns were insufficient to require any investigation or accommodation. The EEOC saw through Gary

Jobs's feeble excuses, however, and issued a Cause finding that Gary Jobs violated Amir's rights under the Americans with Disabilities Act and Title VII of the Civil Rights Act.

## PARTIES

3. Plaintiff Yasmine Amir is female and brings this action individually.

4. Defendant Adams and Associates, Inc. is a Nevada corporation that can be served through its registered agent for service of process, Registered Agent Solutions, Inc., at Corporate Center One, 5301 Southwest Parkway Suite 400, Austin, Texas 78735.

## JURISDICTION AND VENUE

5. This case is brought under the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12112, et seq.; and the Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12112, and 42 U.S.C. § 2000e.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the District. Specifically, Plaintiff worked at the Gary Jobs San Marcos, Texas location.

## FACTS

8. Job Corps is a no-cost education and vocational training program administered by the U.S. Department of Labor that helps young people ages 16-24 improve the quality of their lives by empowering them to get great jobs and become independent.

9. At Job Corps, students have access to room and board while they learn skills in specific training areas for up to three years. In addition to helping students complete their education, obtain career technical skills and gain employment, Job Corps also provides transitional support services, such as help finding employment, housing, childcare, and transportation.

10. Gary Jobs is a federal contractor working under a contract with the Department of Labor to administer the Job Corps program.

11. Amir began working as a Residential Counselor for Gary Jobs, which was then managed by ResCare, in October 2018. Amir worked in the San Marcos location.

12. According to Gary Jobs job postings, Residential Counselors are "[r]esponsible for working with Dorm Life team to provide students on respective dormitory with a safe, clean and structured living environment that fosters student retention, satisfaction, achievement and success. Oversee respective dorm area and uses proper judgment and discretion to resolve student and staff issues and concerns. Provides individualized case management to maintain student enrollment and success in the program. Works in partnership with Dorm Life, Recreation and Safety and Security staff to effectively supervise and manage the student population. Ensures strict confidentiality of sensitive information and integrity of student data."

13. Gary Jobs has a total of ten Residential Counselor positions and there is frequent turnover for the role.

14. On April 1, 2019, Adams & Associates acquired the contract for the Gary Jobs Corps Center. Amir was transferred to Adams & Associates for all relevant employment purposes.

15. Amir was scheduled to work from 3pm to 12am Friday through Tuesday. However, due to staffing shortages Amir was generally required to work from 7am to 12am without any additional pay.

16. On May 6, 2019, Amir wrote to her supervisory chain, "I would like to report a conflict between Gina Gutierrez and myself. . . . She has made negative comments so many times about my accent and keeps insulting me by saying she doesn't understand anything I say. . . . I have reported to her to supervisor, Mr. Norris. However, no one seems to address this issue with

her. I feel so uncomfortable the way she communicates with me and I feel deeply insulted by her stating that she does not understand what I am saying because she is aware that English is my second language. I look forward to someone addressing this issue as soon as possible so I can focus on my job and provide the best service to our students."

17.     Residential Director, Theodore Collier, instructed Amir's supervisor and manager to meet with Amir by the end of the next day to discuss her concerns of racial and national origin harassment. Following that direction, no one from Gary Jobs ever contacted Amir to discuss them.

18.     Following Amir's report of national origin harassment, Gary Jobs began to retaliate against her. Although Gary Jobs removed Gutierrez from the dorm, Gary Jobs refused to replace Gutierrez with anyone else to help Amir. Amir was therefore required to perform the work of two employees and sometimes three or four.

19.     Gary Jobs's regular overwork of Amir—both in terms of hours worked and in terms of requiring her to work on her own when normally several staff would perform the work together—led to an exacerbation in her mental, emotional, and physical health struggles.

20.     On May 15, 2019, Amir provided a medical request for accommodation to her supervisor, Norris, from her health care provider. The letter noted, "Ms. Amir continues to experience anxiety-related symptoms which impair her ability to drive at night. . . . It is in the best interest of Ms. Amir's current mental health status and treatment plan that she continues to work daytime hours only in a part-time capacity."

21.     Norris told Amir that he would not accommodate her request.

22.     Amir then provided the accommodation request to Human Resources and to Shift Manager Rodney Snead. However, HR ignored the request. Gary Jobs explained to the EEOC that

it did not need to do anything with the request because Amir had not filled out the correct paperwork.

23. On May 20, 2019, Amir had a car accident driving home from a late shift with Gary Jobs, caused by her mental and physical stress and fatigue.

24. On May 20, 2019, Amir requested that she be moved to an on call position to accommodate her disability.

25. However, HR Director Stacy Ciaramintaro chose to interpret this email as a resignation and determined it would be effective July 1, 2019.

26. Moreover, before Amir had even switched to a parttime schedule Gary Jobs began decreasing her pay because the company unilaterally switched her to a lower position without informing her of the change.

27. Gary Jobs hired a replacement for Amir on June 18, 2019, effective July 1.

28. Initially, Gary Jobs accommodated her medical restriction and scheduled her to work three days per week, Friday, Saturday, and Sunday. This was a mutually beneficial arrangement because Gary Jobs informed Amir that Gary Jobs did not have enough employees to cover these shifts.

29. However, without prior notice, Adams came into her office on July 1, 2019 and told her that it was her last day. Adams told the entire staff that Amir no longer worked for Gary Jobs. Norris told the entire staff that Gary Jobs had terminated Amir.

30. HR later clarified that July 1, 2019 was not her last day but that she had been moved to on call.

31. On July 8, 2019, Amir was forced to transfer to an on call or parttime residential counselor, noting on the transfer form that "the only option position was given to meet with my dr. request of less hour working sch[edule] & not late night hours."

32. On July 9, 2019, Amir submitted a substantial written discrimination and harassment claim to the Human Resources department. HR declined to accept the claim, instead telling Amir that she had to contact a different office. HR did not forward the claim to the other office or do anything else to investigate or pursue the charge.

33. Gary Jobs claimed to the EEOC that Amir's significant protected activity on May 6, 2019 and then again on July 9, 2019 imposed no duty on them to investigate because she directed her concerns to the wrong person. In particular, Gary Jobs seems to believe it was fully entitled to ignore Amir's concerns because she did not direct her complaints to the staff EEO Officer, telling the EEOC: "When Ms. Amir brought her concerns to the attention of Human Resources, she was provided specific direction to take her complaint to the staff EEO Officer Melinda Good for follow-up, as per Company Policy. . . . Ms. Collins also notified the staff EEO Office that Ms. Amir could be contacting her. . . . Ms. Amir never did follow-up with the EEO Officer for the purpose of reporting and investigating her complaint. This is fatal to Ms. Amir's charge."

34. This outrageous contention is not even supported by Gary Jobs's own policy. At all times, Amir complied with Gary Jobs's Illegal Harassment policy, which required her to bring complaints of illegal harassment "to the attention of your immediate Supervisor and your Human Resources Manager. You may also report your concerns to the Center Director . . . ."

35. On September 19, 2019, after refusing for months to return Amir to work, Gary Jobs signed a Personnel Action Form falsely stating that Amir had voluntarily resigned effective July 1, 2019.

36. Center Shift Manager Barylai Nasri informed the EEOC investigator under oath that he believed Norris, Gutierrez, Adams, and HR worked together to discriminate against Amir and to retaliate against her.

37. Specifically, Nasri informed the EEOC that he investigated Amir's allegation that Gutierrez was making fun of her accent and that HR did not do anything about it.

38. Nasri informed the EEOC that Amir provided medical accommodation paperwork to HR but they did not do anything about it either. Nasri stated that the normal procedure for processing accommodation requests was that HR would call him about whether the request could be accommodated without undue hardship, but that HR never contacted him.

39. If HR had contacted him, Nasri would have informed them that there was a shift available for parttime employees on the weekend, just as Amir had requested. There is a consistent need for more weekend employees to perform residential counseling work.

40. Nasri informed the EEOC that Gary Jobs had other employees on call and that there was a continual shortage of employees. Nasri himself even had to cover shifts during this time period. Nasri was confident that on-call work was available in 2019 for Amir, but that Gary Jobs retaliated against Amir for her accommodation requests and her complaints of Gutierrez's discrimination.

41. Nasri stated under oath that he had worked for Gary Jobs for over six years at the time of the EEOC interview in 2021 and that he "never saw anything like what occurred with [Amir]."

42. On September 28, 2022, the EEOC issued a cause finding that Respondent had violated Title VII of the Civil Rights Act and the Americans with Disabilities Act.

43. Specifically, the EEOC found, Gary Jobs "violated Title VII when it retaliated against Charging Party by subjecting her to different terms and conditions of employment after she made a protected complaint."

44. Additionally, the EEOC determined that Gary Jobs "violated the ADA when it failed to properly engage in the interactive process in response to [Amir's] repeated requests for a reasonable accommodation for her disability; retaliated against [Amir] by removing her from the work schedule; replaced [Amir] with a new hire; failed to contact [Amir] for available on-call work after July 1, 2019; and discharged [Amir]."

45. Amir fully participated in the EEOC conciliation process but on knowledge and belief, Gary Jobs declined to meaningfully respond.

## FIRST CAUSE OF ACTION
### Retaliation Under Title VII of the Civil Rights Act

46. Plaintiff incorporates by reference all of the allegations made in the preceding paragraphs.

47. Under 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate against any of its employees because that employee engaged in protected conduct.

48. Defendant retaliated and/or discriminated against Plaintiff for complaining about harassment from a coworker based on her national origin, Iraqi, and her race, Middle Eastern.

49. After Plaintiff asserted her rights under Title VII, she suffered material adverse employment actions including but not limited to requiring her to perform additional work without compensation, taking her off the schedule, not calling her to work or putting her on the schedule despite the availability of ample work, and ultimately terminating her employment.

50. Said material adverse employment actions would not have occurred but for Plaintiff's protected activity.

## SECOND CAUSE OF ACTION
### Disability Discrimination

51. Plaintiff incorporates by reference all of the allegations made above.

52. Plaintiff is disabled, as defined by the Americans with Disabilities Act ("ADA"). Specifically, as a result of her diagnosed anxiety, Plaintiff has a medical condition that substantially limits one or more major life activities.

53. Plaintiff is qualified to perform the essential functions of the position of Residential Counselor with or without accommodations.

54. Plaintiff is an employee within the meaning of the ADA.

55. Defendant violated the ADA by intentionally discriminating against Plaintiff because of her disability. Defendant's discriminatory acts include removing her from the work schedule, replacing Amir with a new hire, failing to contact Amir for available on-call work after July 1, 2019, and terminating her employment.

56. Additionally, Defendant discriminated against Plaintiff by failing to provide Plaintiff with a reasonable accommodation of a different work schedule. Although Plaintiff requested this accommodation and it would not have caused Defendant any hardship, Defendant refused to make it.

57. Defendant failed to properly engage in the interactive process in response to Plaintiff's repeated requests for a reasonable accommodation for her disability.

## ATTORNEYS FEES AND COSTS

58. Plaintiff is entitled to an award of attorney fees and costs under both Title VII and the ADA.

## JURY DEMAND

59. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues.

## PRAYER

60. For these reasons, Plaintiff asks for judgment against Defendants for the following:

   a. Actual, consequential, and compensatory damages;

   b. Exemplary and punitive damages;

   c. Pre-judgment interest if, as, and when allowed by law;

   d. Reasonable and necessary attorney's fees;

   e. Costs of court;

   f. Post-judgment interest; and

   g. Any other relief to which Plaintiff may be entitled, whether in law or equity

Respectfully submitted,

/s/ Allison Sarah Hartry
Lawrence Morales II
State Bar No. 24051077
lawrence@themoralesfirm.com
Allison Sarah Hartry
State Bar No. 24083149
ahartry@themoralesfirm.com
**THE MORALES FIRM, P.C.**
6243 IH-10 West, Suite 132
San Antonio, Texas 78201
Telephone: (210) 225-0811
Facsimile: (210) 225-0821

***ATTORNEYS FOR PLAINTIFF***